IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

**UNITED STATES OF AMERICA,**

    **Appellant,**

v.                                                                               **Civil Action No. 3:16cv207**

**MATTHEW A. COPLEY,** *et al.,*

    **Appellees.**

## MEMORANDUM ORDER

This matter comes before the Court on Appellant the United States of America's appeal from the final judgment of the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court").[1] The United States and Appellees Matthew A. Copley and Jolinda M. Copley (the "Appellees" or "Debtors") have filed their respective briefs. (ECF Nos. 4, 5, 9.) The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[2] For the reasons that follow, the Court REMANDS this case to the Bankruptcy Court for the determination of whether the United States has sovereign immunity.

### I. Standard of Review

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal."

---

[1] For ease of reference and where applicable, the Court refers to the items in the record according to the page number assigned in the Appendix ("App."), located at ECF No. 3-1.

[2] "The district courts of the United States shall have jurisdiction to hear appeals (1) from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157] . . . ." 28 U.S.C. § 158(a)(1).

*Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526–27 (E.D. Va. 2010) (citing *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The district court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. Bessemer City*, 470 U.S. 564, 573 (1985); *accord In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008). In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond*, 80 F.3d 895, 905 (4th Cir. 1996).

## II. Factual and Procedural Background

### A. Factual Background

This appeal arises out of the Debtors' petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code. The petition for bankruptcy proceeded on stipulated facts. The Debtors filed their petition, along with Schedules A through J, on May 29, 2014. On Schedule E, the Debtors identified the Internal Revenue Service ("IRS") as a creditor holding unsecured priority claims for "Income Taxes" for tax years 2008, 2009, and 2010 in the cumulative amount of $13,547.10. (App. 0025, ¶ 2.)

On Schedule C, the Debtors listed a "refund from *2014* federal . . . income taxes" in the amount of $3,208 pursuant to Virginia Code § 34-4. (App. 0026, ¶ 4 (emphasis added).)[3] The Debtors each filed a Homestead Deed with the Clerk of the Circuit Court for Spotsylvania

---

[3] The parties agree that the Debtors intended to exempt the *2013* federal income tax overpayment.

2

County, Virginia, claiming as exempt a "Refund from *2014* federal . . . income taxes [in the amount of] $3,208." (App. 0026, ¶ 6 (emphasis added).)[4]

The Debtors reported on their joint federal income tax return that their 2013 tax liability totaled $7,054.00, but $10,262.00 had been withheld from their earnings. Thus, the Debtors overpaid their federal income taxes by $3,208.00.

IRS records demonstrate that on or about June 30, 2014, the IRS mailed a "Notice CP 49" to the Debtors, informing them that their "2013 Form 1040 overpayment was applied to tax [they] owe[d]." (App. 0027, ¶ 9.) The Debtors deny receiving the Notice CP 49. The IRS's summary identified the Debtors' "overpayment for 2013 in the amount of $3,208.00" and the "[a]mount applied to tax owed for 2008 [and] 2009" in the amount of $3,208.00. (App. 0027, ¶ 9.) Applying the $3,208 overpayment, the IRS paid in full the Debtors' $158.76 balance from 2008 and applied the remaining $3,049.24 to the Debtors' 2009 balance. The IRS then wrote off the remainder of the Debtors' 2009 balance by reason of their discharge in bankruptcy.

B.  **Procedural History**

On February 1, 2015, the Debtors filed an amended complaint, seeking to compel the United States to turn over the $3,208 tax overpayment because the Debtors had listed it as an exempt asset pursuant to Virginia Code § 34-4 (Virginia's Homestead Exemption)[5] and

---

[4] Again, the parties agree that the Debtors intended to exempt the *2013* federal income tax overpayment.

[5] Section 34-4 states in relevant part: "Every householder shall be entitled . . . to hold exempt from creditor process arising out of a debt, real and personal property, or either, to be selected by the householder, including money and debts due the householder not exceeding $5,000 in value or, if the householder is 65 years of age or older, not exceeding $10,000 in value." Va. Code § 34-4.

3

11 U.S.C. §§ 522 (the debtor's right to exempt),[6] 542(a) (requirement to turn property over to the estate),[7] and 553(b) (the right to setoff).[8] Both parties filed motions for summary judgment. On March 22, 2016, the Bankruptcy Court issued a final order and memorandum opinion. The Bankruptcy Court granted the United States' motion for summary judgment on Count I, denying the Debtors' request for turnover of the tax overpayment under the Virginia common law principle of assumpsit. The Bankruptcy Court granted the Debtors' motion for summary judgment on Count II, granting the Debtors' request for turnover of the tax overpayment under §§ 522 and 542(a).[9]

In ruling in the Debtors' favor on Count II, the Bankruptcy Court followed two decisions of the Bankruptcy Court for the United States District Court for the Western District of Virginia. (App. 0044 (citing *See Addison v. U.S. Dep't of Agric. (In re Adddison)*, 533 B.R. 520 (Bankr. W.D. Va. 2015), *aff'd*, No. 1:15cv41, 2016 WL 223771 (W.D. Va. Jan. 19, 2016); *Sexton v. Dep't of Treas. (In re Sexton)*, 508 B.R. 646 (Bankr. W.D. Va. 2014), *aff'd in part and appeal dismisses in part sub nom., U.S. Dep't of Treas. v. Sexton*, 529 B.R. 667 (W.D. Va. 2015)). As

---

[6] "Notwithstanding section 541 of this title, an individual debtor may exempt from property of the estate the property listed in either paragraph (2) or, in the alternative, paragraph (3) of this subsection." 11 U.S.C. § 522(b)(1).

[7] "Except as provided in subsection (c) or (d) of this section, an entity, other than a custodian, in possession, custody, or control, during the case, of property that the trustee may use, sell, or lease under section 363 of this title, or that the debtor may exempt under section 522 of this title, shall deliver to the trustee, and account for, such property or the value of such property, unless such property is of inconsequential value or benefit to the estate." 11 U.S.C. § 542(a).

[8] "Except as otherwise provided in this section and in sections 362 and 363 of this title, this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ." 11 U.S.C. § 553(a).

[9] The Bankruptcy Court deemed the motions as they pertained to Count III as moot.

explained by the Bankruptcy Court, both *Addison* and *Sexton* held that tax overpayments were property of the estate because "a debtor's right to recover his tax overpayment arises at midnight on the last day of the tax year and that, unless the government has acted [by offsetting the overpayment prior to filing for bankruptcy], the debtor's interest in the overpayment vests in the bankruptcy estate." (App. 0094 (citing *Addison*, 533 B.R. at 529). Addressing the "conflict between § 553, which unqualifiedly preserves the [creditor's] right of offset, and § 522(c), which provides that property claimed exempt is not liable for prepetition debts" that has split courts, (App. 0097), the Bankruptcy Court additionally followed *Addison* and *Sexton* in holding that a debtor's exemption under § 522 applies over the preservation of setoff rights afforded in § 553, (App. 0100). In a thoughtful analysis, the Bankruptcy Court so held even though it addressed offset for a tax debt rather than the nontax debt addressed in *Addison* and *Sexton*.

The United States filed its notice of appeal on April 5, 2016, and then filed an amended notice of appeal on April 6, 2016. (App. 0052.) It now challenges whether the Bankruptcy Court had jurisdiction to hear the case. The United States did not assert below that sovereign immunity barred the Debtors' claim. Accordingly, the Bankruptcy Court did not reach that issue.

### III. Analysis

The United States appeals the Bankruptcy Court's decision on two grounds: (1) the Bankruptcy Court lacked jurisdiction to compel the IRS to refund the tax overpayment without crediting another tax liability; and, (2) the Debtors could not exempt and recover an overpayment of federal income taxes for the year prior to the filing of the bankruptcy because the federal government has authority under 26 U.S.C. § 6402 to set off the overpayment against the Debtors' dischargeable prepetition income tax liability. (Appellant's Br. 2–3.) The Court begins, as it must, by assessing the threshold jurisdictional challenge.

### A. The Bankruptcy Court Shall Determine Its Jurisdiction Over the Debtors' Lawsuit

The United States contends that the Bankruptcy Court lacked jurisdiction to hear the Debtors' refund suit because the United States has not waived its sovereign immunity from such cases under 11 U.S.C. §§ 106 and 505. Although the United States did not raise this argument before the Bankruptcy Court, the parties agree that a lack of subject-matter jurisdiction may be called to the Court's attention at any time. The Court concurs. "[I]t has been the rule since nearly the inception of our republic that subject matter jurisdiction may be raised any time." *United States v. Bond*, 762 F.3d 255, 263 (2d Cir. 2014) (citation omitted). "Where jurisdiction has not been conferred by Congress, no officer of the United States has power to give to any court jurisdiction of a suit against the United States." *Minnesota v. United States*, 305 U.S. 382, 388–89 (1939). "It rests with Congress to determine not only whether the United States may be sued, but in what courts the suit may be brought." *Id.* at 388. Nonetheless, on the record before it, the Court finds that issues remain that, at the very least, invoke mixed questions of law and fact. For that reason, the Bankruptcy Court should decide whether it lacked jurisdiction to adjudicate the Debtors' tax refund claim.

#### 1. Legal Standard for the United States' Sovereign Immunity in Bankruptcy Cases

Absent a waiver that permits suits against it on a particular kind of matter, sovereign immunity protects the United States and its agencies from suit. *F.D.I.C. v. Meyer*, 510 U.S. 471, 475 (1994). Any waiver of sovereign immunity by the United States must be "unequivocally expressed" and "construed strictly in favor of the sovereign." *United States v. Nordic Village*, 503 U.S. 30, 33–34 (1992) (citations omitted). If an action falls outside the strictly-construed terms of an unequivocal waiver, the Court lacks subject-matter jurisdiction and the action must be dismissed. *See id.*; *Meyer*, 510 U.S. at 475.

The Bankruptcy Code expressly abrogates sovereign immunity in 11 U.S.C. § 106,[10] which lists 59 provisions. Among them is 11 U.S.C. § 505, which relates to the determination of tax liabilities. Generally, Section 505 authorizes bankruptcy courts to determine the "amount or legality" of any tax liability of an estate or a debtor. *See IRS v. Levy (In re Landbank Equity Corp.)*, 973 F.2d 265, 270 (4th Cir. 1992). Section 505 provides in relevant part:

> (a)(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.
>
> (2) The court may not so determine—
>
>> (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;
>>
>> (B) any right of the estate to a tax refund, before the earlier of—
>>
>>> (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
>>>
>>> (ii) a determination by such governmental unit of such request; or
>>
>> (C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

---

[10] Section 106 provides in pertinent part:

> **(a)** Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to the following:
>
>> **(1)** Section[] . . . 505 . . . of this title.

11 U.S.C. § 106(a)(1).

7

11 U.S.C. § 505(a)(1)–(2). In order to resolve the United States' jurisdictional challenge, the Court must determine the scope of the United States' waiver of sovereign immunity as provided under § 505.

### 2. Whether Section 505 Abrogates the United States' Sovereign Immunity From the Debtors' Suit to Recover a Tax Refund

Neither party disputes that Section 505(a)(1)'s broad language confers jurisdiction over "any tax." 11 U.S.C. § 505(a)(1). The parties likewise appear to agree that an explicit carve-out limits that jurisdiction: "*Except* as provided in paragraph (2) of this subsection." *Id.* (emphasis added). That paragraph lists three exceptions to the general rule that the bankruptcy court has jurisdiction over "any tax," one of which restricts the ability of the bankruptcy court to determine tax refund claims. *See id.* § 505(a)(2) ("The court may not so determine . . . any *right of the estate* to a tax refund, before the earlier of . . . 120 days after *the trustee* properly requests such refund from the governmental unit from which such refund is claimed; or[,] . . . (ii) a determination by such governmental unit of such request." (emphases added)).

The parties' understanding of § 505, and its application to this case, diverges with respect to the effect of the two conditions that purportedly must be satisfied before a bankruptcy court has jurisdiction to determine a tax refund claim: (1) that the "trustee" must properly request the tax refund from the government for the "right of the estate"; and, (2) that either the government must rule on the trustee's request or 120 days must elapse. *See United States v. Bond*, 762 F.3d 255, 260 (2d Cir. 2014).

Here, the United States contends that the Debtors cannot establish jurisdiction for two related reasons: (1) because the Debtors, not a "trustee," filed the tax refund claim; and, (2) because the Debtors filed the tax refund claim on their own behalf, and not for the right of the estate. The United States' position relies on the plain language of the statute and appears to track

8

the reasoning set forth by the Honorable Emilio Garza's dissent in *In re Luongo*, 259 F.3d 323 (5th Cir. 2001).[11] *Luongo*, in many aspects, addresses the bankruptcy issues presented here. The Debtors, however, rely on the majority opinion in *Luongo* only on the issue of sovereign immunity and suggest that the United States' position advocates form over substance. After *Luongo* was decided, no court of appeals explicitly addressed the sovereign immunity issue in an analogous context until the United States Court of Appeals for the Second Circuit did so in *Bond*.[12]

---

[11] Judge Garza explained that the court should not have reached the merits of the debtor's claim in *Luongo* because the bankruptcy court lacked jurisdiction. Judge Garza reasoned that "the bankruptcy court's jurisdiction extends only to claims for refunds that benefit the estate." *In re Luongo*, 259 F.3d at 336 (Garza, J., dissenting). That case involved a debtor's claim to recover an income tax overpayment, which the debtor exempted from bankruptcy under § 522. At least one district court seems to have adopted Judge Garza's reasoning, albeit without discussing the issue in depth. *See In re Waters*, No. 3:09cv01271, 2016 WL 2946142, at *3 (D. Conn. Mar. 15, 2016), *opinion clarified*, (June 1, 2016) ("Section 505 refers only to a refund *on behalf of a debtor's estate*, not to a personal refund of an alleged tax overpayment by the debtor personally. The section does not unequivocally authorize suit by Waters individually. Thus, it must be strictly construed in favor of the United States." (emphasis added)).

[12] In *Bond*, the debtors filed postpetition tax returns. 762 F.3d at 257. The IRS then filed an administrative expense claim for postpetition interest and penalties. *Id.* Prior to resolution of the IRS's claim, the bankruptcy court confirmed a Chapter 11 plan that transferred certain assets, including the tax refund claims, to a liquidated trust. *Id.* As liquidated trustee, Bond filed a counterclaim against the IRS seeking a refund of the postpetition taxes. *Id.* at 258. The IRS asserted sovereign immunity, but both the bankruptcy court and the district concluded that the United States had waived it under §§ 106(a) and 505(a). *Id.*

On appeal, the IRS again asserted sovereign immunity, contending, like the United States here, that § 505(a)'s waiver applies only to refund requests made by a *bankruptcy trustee*. The IRS refuted the notion that Bond, a *liquidating trustee* appointed under a reorganization plan, could qualify as a "trustee" under § 505(a). The Second Circuit agreed, distinguishing a liquidating trustee from a bankruptcy trustee. *Id.* at 262. The Second Circuit, however, did not read "trustee" literally. *Id.* The court explained: "[P]aragraph 2 of § 505(a) does not 'expressly' 'limit the right to bring refund claims in bankruptcy court solely to bankruptcy trustees.'" *Id.* (citation omitted). The court, however, still found for the IRS, reasoning that "Section 505(a)(2)(B) identifies the right to a tax refund as a *'right of the estate'* without specifying who may seek to enforce that right in bankruptcy court." *Id.* (emphasis added).

In *Bond*, the court concluded: "[T]he jurisdiction of the bankruptcy court is premised on the action of an entity that draws its authority directly from the [Bankruptcy] Code itself (*i.e.*, a debtor or bankruptcy trustee), rather than on the action of an entity (such as the Liquidating

9

With reason, the Bankruptcy Court did not decide this issue: neither party raised sovereign immunity below. Moreover, although they discussed *Luongo*, the Western District of Virginia cases on which the Bankruptcy Court relied did not consider sovereign immunity or subject-matter jurisdiction. As a result, the record before the Court does not provide an appropriate basis for determining these issues, which ultimately constitute mixed questions of law and fact. In the absence of the Bankruptcy Court's factual findings on the United States' assertion of sovereign immunity, and in consideration of the importance of this subject-matter determination, the Court will remand this case to the Bankruptcy Court. After establishing the record necessary for deciding this issue, the Bankruptcy Court shall determine: (1) whether the Debtors constitute "trustees" as contemplated under § 505; and, (2) whether the Debtors, who purportedly exempted the tax refund from bankruptcy, sought the refund for "the right of the estate."

---

Trustee) whose authority derives from a Chapter 11 plan over which a bankruptcy court has full control, and the Congress none." *Id.* at 261–62. The Second Circuit made a critical distinction that might shed light on what § 505(a) intends by "right of the estate":

> [Section] 505(a) requires an expedited response (within 120 days) to a trustee's tax refund claim before the bankruptcy court can exercise jurisdiction, a spur that "prevent[s] a refund claim from languishing in the administrative process." *IRS v. Luongo*, 259 F.3d 323, 329 n.4 (5th Cir. 2001). *It makes sense that this expedited procedure is available only to a bankruptcy trustee seeking a ruling from the IRS to speed plan confirmation.* We therefore conclude that Congress permits a bankruptcy court to confirm a plan that authorizes a representative to pursue tax refund claims while (at the same time) Congress prohibits a bankruptcy court from reviewing those claims unless they were initiated by a debtor or a trustee in bankruptcy.

*Id.* at 261 (emphasis added).

## IV. Conclusion

For the foregoing reasons, the Court finds that the Bankruptcy Court must determine the effect, if any, of the United States' assertion of sovereign immunity. The Court REMANDS this case to the Bankruptcy Court. The Clerk shall docket this decision and close the case.

Let the Clerk send a copy of this Memorandum Order to all counsel of record and to the Bankruptcy Court.

It is so ORDERED.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 3/31/17