# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Richmond Division

**UNITED STATES OF AMERICA,**

      **Appellant,**

v.

                                   **Civil Action No. 3:16cv207**

**MATTHEW A. COPLEY,** *et al.*,

      **Appellees.**

### MEMORANDUM OPINION

This matter comes before the Court on Appellant the United States of America's appeal from the final judgment of the United States Bankruptcy Court for the Eastern District of Virginia (the "Bankruptcy Court"). The United States and Appellees Matthew A. Copley and Jolinda M. Copley (the "Appellees" or "Debtors") have filed their respective briefs. (ECF Nos. 16, 17, 19.) The Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. The Court exercises jurisdiction pursuant to 28 U.S.C. § 158(a)(1).[1] For the reasons that follow, the Court will affirm the decision of the Bankruptcy Court and will dismiss this appeal.

### I. Standard of Review

"When reviewing a decision of the bankruptcy court, a district court functions as an appellate court and applies the standards of review generally applied in federal courts of appeal." *Paramount Home Entm't Inc. v. Circuit City Stores, Inc.*, 445 B.R. 521, 526–27 (E.D. Va. 2010) (citing *In re Webb*, 954 F.2d 1102, 1103–04 (5th Cir. 1992)). The district court reviews the bankruptcy court's legal conclusions *de novo* and its factual findings for clear error. *In re*

---

[1] "The district courts of the United States shall have jurisdiction to hear appeals . . . from final judgments, orders, and decrees . . . of bankruptcy judges entered in cases and proceedings referred to the bankruptcy judges under [28 U.S.C. § 157] . . . ." 28 U.S.C. § 158(a)(1).

*Harford Sands Inc.*, 372 F.3d 637, 639 (4th Cir. 2004). A finding of fact is clearly erroneous if a court reviewing it, considering all of the evidence, "is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 365 (1948)); *accord In re Mosko*, 515 F.3d 319, 324 (4th Cir. 2008) (quoting *United States Gypsum Co.*, 333 U.S. at 365). In cases where the issues present mixed questions of law and fact, the Court will apply the clearly erroneous standard to the factual portion of the inquiry and *de novo* review to the legal conclusions derived from those facts. *Gilbane Bldg. Co. v. Fed. Reserve Bank of Richmond, Charlotte Branch*, 80 F.3d 895, 905 (4th Cir. 1996).

## II. Factual and Procedural Background

### A.    Factual Background[2]

This appeal arises out of the Debtors' petition for bankruptcy under Chapter 7 of the United States Bankruptcy Code.[3] The petition for bankruptcy proceeded on stipulated facts. On May 29, 2014, the Debtors filed a petition for bankruptcy, along with Schedules A through J.[4] On Schedule E,[5] the Debtors identified the Internal Revenue Service ("IRS") as a creditor

---

[2] For ease of reference, and where applicable, the Court refers to the items in the record according to the page number assigned in the Appendix ("App."), located at ECF No. 16-1.

[3] Chapter Seven of the Bankruptcy Code provides for the sale of a debtor's nonexempt property and the distribution of the proceeds to creditors, known as "liquidation." 11 U.S.C. §§ 701 *et seq.*

[4] A debtor filing for bankruptcy must file certain forms, or "Schedules," detailing their financial situation, including: all property interests, all assets, all debts, and any claims for exemptions. United States Courts, Bankruptcy Forms, http://www.uscourts.gov/forms/ bankruptcy-forms (last visited Aug. 20, 2018).

[5] On Schedule E, debtors list creditors who have unsecured claims, specifying the priority and nonpriority amounts for each claim. UNITED STATES COURTS, SCHEDULE E/F: CREDITORS

holding unsecured priority claims for "Income Taxes" for tax years 2008, 2009, and 2010 in the cumulative amount of $13,547.10. (App. 0025, ¶ 2.) On Schedule C,[6] the Debtors listed as exempt a "refund from *2014* federal . . . income taxes" in the amount of $3,208.00[7] pursuant to Virginia Code § 34-4 (Virginia's Homestead Exemption).[8] (App. 0026, ¶ 4 (emphasis added).) The parties agree that the Debtors intended to exempt the 2013 federal income tax overpayment.

On June 3, 2014, the Debtors each filed a Homestead Deed with the Clerk of the Circuit Court for Spotsylvania County, Virginia, claiming as exempt a "Refund from *2014* federal . . . income taxes [in the amount of] $3,208.00." (App. 0026, ¶ 6 (emphasis added).) The parties agree that the Debtors intended to exempt the 2013 federal income tax overpayment.[9]

On June 6, 2014, the Debtors filed their 2013 federal tax return with the IRS. The Debtors reported that their 2013 tax liability totaled $7,054.00, but that $10,262.00 had been

---

WHO HAVE UNSECURED CLAIMS, http://www.uscourts.gov/sites/default/files/form_b106ef.pdf (last visited Aug. 20, 2018).

[6] On Schedule C, debtors list property they claim as exempt, specifying in each case the law that provides for the claim for exemption. UNITED STATES COURTS, SCHEDULE C: THE PROPERTY YOU CLAIM AS EXEMPT, http://www.uscourts.gov/sites/default/files/form_b_106c.pdf (last visited Aug. 18, 2018).

[7] As of December 31, 2013, the Debtors had paid $10,262.00 in federal taxes for the 2013 tax year through withholding of earnings. The Debtors' 2013 tax liability totaled only $7,054.00, meaning they had overpaid their 2013 taxes by $3,208.00.

[8] Section 34-4 states in relevant part: "Every householder shall be entitled . . . to hold exempt from creditor process arising out of a debt, real and personal property, or either, to be selected by the householder, including money and debts due the householder not exceeding $5,000 in value or, if the householder is 65 years of age or older, not exceeding $10,000 in value." Va. Code § 34-4.

[9] Despite the typographical errors in the underlying record, the parties agree that the Debtors intended to exempt the 2013 federal tax overpayment. To avoid unnecessary confusion, the Court refers to the year at issue: 2013.

withheld from their earnings. Because the Debtors overpaid federal income taxes in 2013 by $3,208.00, they claimed a refund in that amount.

On or about June 30, 2014, IRS records demonstrate that the IRS mailed a Notice to the Debtors, informing them that their "2013 Form 1040 overpayment was applied to tax [they] owe[d]." (App. 0027, ¶ 9.) The Debtors deny receiving this notice.[10] The summary identified the Debtors' "overpayment for 2013 in the amount of $3,208.00" and listed $3,208.00 as the "[a]mount applied to tax owed for [years] 2008 [and] 2009." (App. 0027 ¶ 9 (brackets in original).) Using the $3,208.00, the IRS paid in full the Debtors' $158.76 unpaid tax balance from 2008, and applied the remaining $3,049.24 to the Debtors' 2009 unpaid tax balance. The IRS then wrote off the remainder of the Debtors' 2009 unpaid tax balance by reason of their discharge in bankruptcy.[11]

### B.    Procedural History

On February 1, 2015, the Debtors filed an Amended Complaint in the Bankruptcy Court,[12] seeking to compel the United States to turn over the $3,208.00 tax overpayment. The Debtors sought the tax refund return because they had listed it as an exempt asset pursuant to Virginia Code § 34-4 and 11 U.S.C. §§ 522[13] (the debtor's right to exempt), 542(a)[14]

---

[10] This factual dispute had no bearing on the Bankruptcy Court's holdings below, and does not affect the Court's analysis here.

[11] The 2010 prepetition tax liability has no bearing on this case, which assesses whether the IRS inappropriately set off the 2013 overpayment to the 2008 and 2009 tax liabilities.

[12] The Debtors filed their original complaint on September 17, 2014, and amended it with the Bankruptcy Court's leave.

[13] Section 522 allows debtors to exempt certain property of the bankruptcy estate from the reach of creditors, including, under certain circumstances applicable here, property that a Debtor may exempt from the reach of creditors under state law. 11 U.S.C. § 522.

(requirement to turn property over to the estate), and 553(b)[15] (the right to setoff).  Both parties

filed motions for summary judgment.

On March 22, 2016, the Bankruptcy Court issued a final order and memorandum opinion.

The Bankruptcy Court granted the United States's motion for summary judgment on Count I,

denying the Debtors' request for turnover of the tax overpayment under the Virginia common

law principle of assumpsit.  The Bankruptcy Court granted the Debtors' motion for summary

judgment on Count II, granting the Debtors' request for turnover of the tax overpayment under

§§ 522 and 542(a).[16]

On April 6, 2016, the United States filed an amended notice of appeal[17] challenging

whether the Bankruptcy Court had jurisdiction to hear the case and claiming, for the first time on

appeal, that it did not waive sovereign immunity for the purpose of the Debtors' claims.  The

United States never asserted in the Bankruptcy Court that sovereign immunity barred the

Debtors' claim, so the Bankruptcy Court did not reach that issue.  The Court remanded the case

to the Bankruptcy Court to rule on the issue of sovereign immunity.  After considering the

---

[14] Section 542 requires entities to deliver to the trustee of the bankruptcy estate any property that constitutes part of the bankruptcy estate or that the debtor may exempt from the bankruptcy estate under § 522.  11 U.S.C. § 542(a).

[15] Section 553 provides that, with certain exceptions not applicable here, "this title does not affect any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . ."  11 U.S.C. § 553(a).

[16] The Bankruptcy Court deemed the motions as they pertained to Count III moot.

[17] The United States filed its original notice of appeal on April 5, 2016.

parties' briefing on the issue, the Bankruptcy Court ruled that Congress abrogated the United States's sovereign immunity under 11 U.S.C. § 106(a).[18]

The United States renewed its appeal, on four grounds: (1) the Bankruptcy Court lacked jurisdiction to compel the IRS to refund the tax overpayment; (2) the Debtors' 2013 federal income tax overpayment did not become part of the bankruptcy estate until after the IRS set off the overpayment against the Debtors' prepetition income tax liability pursuant to 26 U.S.C. § 6402;[19] (3) the United States did not need to object to the Debtors' claim for a refund to preserve its setoff rights because the Debtors' refund claim lacked any value; and, (4) the United States's setoff right under § 553 supersedes the Debtors' exemption rights under § 522. The Court begins, as it must, by assessing the threshold jurisdictional challenge.

### III. Analysis: Sovereign Immunity

The United States argues that the Bankruptcy Court lacked jurisdiction to hear the Debtors' refund suit because the United States has not waived its sovereign immunity from such cases under 11 U.S.C. § 106. Specifically, the United States says that none of the Bankruptcy

---

[18] Section 106 provides in pertinent part: "Notwithstanding an assertion of sovereign immunity, sovereign immunity is abrogated as to a governmental unit to the extent set forth in this section with respect to . . . [§§ 505, 522, 542, 553] . . . of this title." 11 U.S.C. § 106(a)(1). The Debtors' claim to their tax overpayment arises under §§ 522 and 553.

[19] Section 6402 of the Internal Revenue Code provides in relevant part:

In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to subsections (c), (d), (e), and (f) refund any balance to such person.

26 U.S.C. § 6402(a). Unlike § 6402(a), which deems offset *discretionary* against preexisting income tax liabilities, subsections c–f of § 6402 *require* the IRS to offset any overpayment against past due support, debts to other federal agencies, past-due state taxes, and certain unemployment compensation debts. *See* 26 U.S.C. § 6402(c–f).

6

Code sections referenced in § 106—specifically, 505,[20] 522, 542, and 553—provides the Debtors with "an avenue for bringing a suit to recover a tax overpayment." (Appellant's Br. 15, ECF No. 16.)

The Bankruptcy Court held § 505 inapplicable, found §§ 522 and 553 directly implicated, and determined that the United States was "bound by the abrogation of sovereign immunity provided in § 106(a)." (App. 0074.) On appeal, the United States argues that "[§] 106(a)'s waiver allows a court to take action against the United States *only* in the manner and to the extent set out in the listed Code provisions." (Appellant's Br. 12.) The United States argues that the listed code sections at issue—505, 522, 542, and 553—do not abrogate the United States's sovereign immunity in this case because none of the applicable code sections create a cause of action like the one at bar. For the reasons below, the Court will affirm the Bankruptcy Court's holding.

---

[20] Section 505(a) provides in relevant part:

(1) Except as provided in paragraph (2) of this subsection, the court may determine the amount or legality of any tax, any fine or penalty relating to a tax, or any addition to tax, whether or not previously assessed, whether or not paid, and whether or not contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction.

(2) The court may not so determine—
    (A) the amount or legality of a tax, fine, penalty, or addition to tax if such amount or legality was contested before and adjudicated by a judicial or administrative tribunal of competent jurisdiction before the commencement of the case under this title;
    (B) any right of the estate to a tax refund, before the earlier of—
        (i) 120 days after the trustee properly requests such refund from the governmental unit from which such refund is claimed; or
        (ii) a determination by such governmental unit of such request; or
    (C) the amount or legality of any amount arising in connection with an ad valorem tax on real or personal property of the estate, if the applicable period for contesting or redetermining that amount under applicable nonbankruptcy law has expired.

11 U.S.C. § 505(a)(1)–(2).

### A. Legal Standard for the United States's Sovereign Immunity in Bankruptcy Cases

Absent a waiver that permits suits against it on a particular kind of matter, sovereign immunity protects the United States and its agencies from suit. *FDIC v. Meyer*, 510 U.S. 471, 475 (1994). Any waiver of sovereign immunity by the United States must be "unequivocally expressed" and "construed strictly in favor of the sovereign." *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34 (1992) (internal quotation marks and citations omitted). If an action falls outside the strictly-construed terms of an unequivocal waiver, the Court lacks subject-matter jurisdiction, and the action must be dismissed. *See id.*; *Meyer*, 510 U.S. at 475.

The Bankruptcy Code expressly abrogates sovereign immunity in 11 U.S.C. § 106 as to fifty-nine (59) provisions of the Bankruptcy Code. The list of provisions includes 11 U.S.C. §§ 505, 522, 542, and 553.

### B. Sections 106, 522, and 553 Abrogate the United States's Sovereign Immunity

Section 106 expressly abrogates the United States's sovereign immunity for the purpose of this suit. First, Debtors bring their claims pursuant to §§ 522 and 553. Because the suit directly implicates §§ 522 and 553, and because resolving the case requires resolving the tension between §§ 522 and 553, the case falls squarely within the scope of §§ 522 and 553. Section 106, in turn, abrogates the United States's sovereign immunity with regard to suits implicating these provisions. *See* 11 U.S.C. § 106(a)(1). Further, § 106 also states: "[t]he court may hear and determine *any issue* arising with respect to the application of such sections to governmental units." 11 U.S.C. § 106(a)(2)) (emphasis added).

As the Bankruptcy Court explained, "the Court is being called upon to reconcile the enforceability of an exemption under § 522 [and] the ability of the United States to exercise a

setoff under § 553." (App. 0073.) The United States Bankruptcy Court for the Western District

of Virginia thoroughly analyzed the issue:

> At least two of the statutes expressly enumerated in Section 106(a), 11 U.S.C.
> § 522 and 11 U.S.C. § 553, are directly implicated in this case, wherein the Court
> is asked to determine whether the Debtor has an enforceable exemption in the tax
> overpayment that entitles her [or him] to a refund over the IRS's claim of
> offset. . . . [T]he issues at hand go to the crux of the functions of [§§] 522 and
> 553, both expressly within the [§] 106 waiver provisions.

*In re Benson*, 566 B.R. 800, 805 (Bankr. W.D. Va. 2017). The Bankruptcy Court held, correctly,

§§ 522 and 553 directly implicated in this suit.

The United States argues that § 106(a)(1) abrogates sovereign immunity only to the

extent that the listed provisions create an independent cause of action, and that neither § 522 nor

§ 553 creates a cause of action that would authorize Debtors to bring this suit.[21] Although the

Bankruptcy Court did not expressly address the United States's argument for a more narrow

construction of §§ 522 and 553, the Court concludes that this argument lacks merit.

The United States asks the Court to adopt the novel interpretation that § 522 does not

create a cause of action similar to the one at bar because "[t]he only 'suit provisions' of [§] 522

are subsections (f) (relating to the avoidance of liens), and subsection (h), which allows a debtor

to recover a setoff in very limited circumstances that are patently inapplicable to this case."

---

[21] The United States applies the same reasoning to also argue that § 505 does not create a
cause of action in this case. The Court finds § 505 inapplicable.

Section 505 authorizes a bankruptcy court to "determine the amount or legality of any
tax," with some stated exceptions. 11 U.S.C. § 505(a)(1). As the United States concedes, "there
is no dispute about the amount of or legality of the 2008, 2009, or 2014 taxes." (Appellant's Br.
16.) A factually and procedurally analogous case from the Western District of Virginia
Bankruptcy Court, *In re Benson*, correctly concluded that § 505 did not apply to a case in which
no dispute about the amount of tax liability existed. 566 B.R. at 804 n.2.

As in *In re Benson*, "[t]he Court is not being asked to calculate the Debtor's tax liability
of any year in any manner. Those issues are stipulated." *Id.* at 805. Because no party here
disputes the amount or legality of the tax, the Bankruptcy Court rightly held § 505 inapplicable
to the case at bar. Section 505 lacks bearing on the question of sovereign immunity.

(Appellant's Br. 17.)  The United States invites the Court to adopt this construction without

citing to any legal precedent for this proposition.  Indeed, contrary Virginia law exists.  *See, e.g.,*

*In re Benson*, 566 B.R. at 805 (finding that claims almost identical to the claims at bar fit within

the meaning of § 522).  Adopting the United States's narrow interpretation would contradict the

express terms of Bankruptcy Code § 106.

Also, abrogation of sovereign immunity pursuant to § 106(a) supports the goals of the

Bankruptcy Code, including "centraliz[ing] disputes over the debtor's assets and obligations in

one forum, thus protecting both debtors and creditors from piecemeal litigation and conflicting

judgments."  *In re Benson*, 566 B.R. at 806 (citing *In re White Mountain Mining Co., LLC*, 403

F.3d 164, 170 (4th Cir. 2005)).  Abrogation serves additional Bankruptcy Code goals, such as

facilitating the cost-effective use of the Debtors' financial resources and the efficient use of

judicial resources.  *In re Benson*, 566 B.R. at 806.  Finally, abrogation facilitates the Bankruptcy

Code's fundamental goals:  "provid[ing] debtors with a fresh start and creditors with an equitable

distribution of the debtor's assets."  *Moses v. CashCall, Inc.*, 781 F.3d 63, 72 (4th Cir. 2015)

(citing *Katchen v. Landy*, 382 U.S. 323, 328 (1966)).  In short, "the obvious purpose of

[§] 106(a), and the most reasonable interpretation to give effect to its provisions, is to bring

adjudication of all those matters [including those related to the tension between §§ 522 and 553]

under one roof—that of the bankruptcy court."  *In re Benson*, 566 B.R. at 806.

Section 106(b), which permits a court to "hear and determine *any issue* arising with

respect to the application of such sections to governmental units," further supports this

interpretation.  11 U.S.C. § 106(a)(2)) (emphasis added).  The Bankruptcy Court highlighted this

provision in holding that § 106 abrogates the United States's sovereign immunity.  The United

States asserts that adopting the Bankruptcy Court's interpretation "would substantially widen the

scope of suits to which the United States is subject." (Appellant's Br. 22.) According to the

United States, were the Court to affirm the Bankruptcy Court's interpretation of sovereign

immunity under § 106(a), "the only rule would be that a debtor cite to one of the enumerated

sections without needing to actually fit within that section's language." (Appellant's Br. 25.)

The United States overstates the effect of the Bankruptcy Court's holding.

The present case does not simply cite to §§ 522 and 553, but directly implicates the

application of §§ 522 and 553. The Debtors' claim "fits within" § 522 because they allege that

the IRS improperly withheld the $3,208.00 in violation of the Debtors' claimed § 522 exemption.

The United States invoked § 553 to perform the disputed offset. The application of these

provisions constitute the heart of the case. Nothing in the Bankruptcy Court's interpretation of

the United States's abrogation of sovereign immunity under § 106(a) commands the expansive

consequence suggested by the United States.

As have other courts to address the issue, this Court concludes that § 106(a) abrogates the

United States's sovereign immunity under §§ 522 and 553, meaning that the Bankruptcy Court

properly exercised jurisdiction over the claims before it.[22] *See, e.g., In re Benson*, 566 B.R. at

---

[22] The Bankruptcy Court did not discuss the United States's abrogation of sovereign immunity under § 542. Section 542 requires entities to deliver to a bankruptcy estate trustee any property that constitutes part of the bankruptcy estate or that the debtor may exempt from the bankruptcy estate under § 522. 11 U.S.C. § 542(a). Because the Bankruptcy Court found that § 106(a) abrogated the United States's sovereign immunity under §§ 522 and 553, the two relevant statutes, no need to address § 542 existed. For the same reason, the Court need not address the issue here.

Even were the Court to analyze § 542 separately, it would likely find that § 106(a) abrogates sovereign immunity because this suit would directly implicate § 542. Section 542, in conjunction with § 522, gives rise to the Debtors' claim for the return of their overpayment.

806.[23] For this reason, the Court will affirm the Bankruptcy Court's conclusion that the United States was subject to suit under §§ 522 and 553 pursuant to § 106(a).

## IV. Analysis: The IRS's Right to Offset the 2013 Tax Refund

The Bankruptcy Court masterfully understated that "[t]he effect of a taxpayer's filing bankruptcy while the government is in the process of executing an offset pursuant to [§ 6402] has generated a great deal of conflicting case law." (App. 0036 (citing *In re Sexton*, 508 B.R. 646, 659–62 (Bankr. W.D. Va. 2014); *In re Pigott*, 330 B.R. 797, 799 (Bankr. S.D. Ala. 2005)).) The United States Court of Appeals for the Fourth Circuit has not resolved the tension between the exemption provisions and tax offset provisions at issue here.[24] Federal courts across the country have taken varying approaches, and reached contrary outcomes, when addressing the interplay of setoffs and exemptions under the Bankruptcy Code. Indeed, some tension has developed recently among Virginia federal courts. *Compare In re Benson*, 566 B.R. 800 (holding that § 553 preserves the IRS's right to setoff under § 6402 without qualification), *with In re Addison*, 533 B.R. 520 (Bankr. W.D. Va. 2015), aff'd No. 1:15CV41, 2016 WL 223771 (W.D. Va. Jan. 19, 2016) (finding § 6402 setoff rights subject to the Bankruptcy Code's automatic stay provisions), *and In re Sexton*, 508 B.R. 646 (finding that a properly claimed exemption under § 522 supersedes § 553.).[25]

---

[23] Although the Court concurs with the *In re Benson* court's finding as to sovereign immunity, this Court approaches the interplay between setoff rights and exemption rights somewhat differently.

[24] The Bankruptcy Court noted, and the United States conceded, that the Fourth Circuit, in an unpublished opinion, affirmed a decision of the Bankruptcy Court for the Eastern District of Virginia holding that, "generally, a right of setoff cannot be exercised against the exempt assets of the debtor." (App. 0036 n.8 (quoting *Thompson v. Bd. of Trustees (In re Thompson)*, 182 B.R. 140, 153 (Bankr. E.D. Va. 1995), aff'd 92 F.3d 1182 (4th Cir. 1996)).)

[25] Both *In re Addison* and *In re Sexton* involved non-tax liabilities and the application of a different subsection of § 6402 from the subsection at issue here. The Court finds the reasoning

For the reasons that follow, the Court will affirm the Bankruptcy Court's rulings. First, the Court cannot find that the Bankruptcy Court abused its discretion in disallowing the setoff. After thoroughly reviewing the law and the cases the Bankruptcy Court relied on, the Court cannot find that the Bankruptcy Court erroneously applied the law. Therefore, for the reasons explained below, the Court agrees with the Bankruptcy Court's conclusion that § 522 supersedes § 553.

## A.    The Bankruptcy Court Did Not Abuse its Discretion

The Court reviews the Bankruptcy Court's decision to disallow a setoff for abuse of discretion. *In re Lambert Oil Co., Inc.*, 347 B.R. 508, 521 (W.D. Va. 2006) (citing *In re Larbar Corp.*, 177 F.3d 439, 447 (6th Cir. 1999); *see also In re Gould*, 401 B.R. 415, 421 (B.A.P. 9th Cir. 2009), *aff'd*, 603 F.3d 1100 (9th Cir. 2010). The Bankruptcy Court considered the parties' arguments and existing bankruptcy court decisions from the Western District of Virginia to hold that § 522 supersedes § 553 in this case. The Court recognizes that "a bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *In re Gould*, 401 B.R. at 429.

As discussed below, after thoroughly reviewing the cases that the Bankruptcy Court relied on, cases from other jurisdictions, and the parties' arguments, the Court determines that the Bankruptcy Court did not err in its application of the law or rely on clearly erroneous facts to reach the conclusion that § 522 supersedes § 553. The Court also finds that the Bankruptcy Court acted within its discretion to disallow the § 553 setoff.

---

of both as to the intersection between the right to exempt property from the bankruptcy estate under § 522 and the right to offset under § 553 persuasive. Although *In re Benson*, which favored § 553, sought to differentiate its findings from *In re Addison* and *In re Sexton*, in part, on the grounds that *In re Benson* involved a tax versus tax setoff, *see In re Benson*, 566 B.R. at 814–15, other courts have not found this distinction as meaningful, *see, e.g., In re Alexander*, 225 B.R. 145. This Court explains its basis for deciding that § 522 supersedes § 553 above.

**B.** <u>The Debtors Retain Their Right to the 2013 Tax Overpayment</u>

The Court recognizes that many courts addressing the interplay between § 522 and § 553 have reached conflicting conclusions. This case presents a difficult legal issue, and one lacking a straightforward resolution. But after evaluating the statutes and extant caselaw, the Court concludes that the Debtors retain their right to the 2013 overpayment.

First, the Debtors' claim to the $3,208.00 overpayment for their 2013 federal taxes vested on December 31, 2013, at midnight. Next, the $3,208.00 overpayment became part of the bankruptcy estate upon the Debtors' filing, on May 29, 2014. At that juncture, any right the United States had to the Debtors' overpayment became subject to the provisions of the Bankruptcy Code. Finally, the Debtors' rights under § 522 supersede the United States's right to offset under § 553. Section 553's discretionary application, concerns over nullification, and the fundamental policy goals of the Bankruptcy Code support this conclusion. The United States shall release the $3,208.00 overpayment to the Debtors.

### 1. Applicable Statutory Provisions

Several statutory provisions undergird this case. To aid its later discussion, the Court outlines the relevant provisions below.

#### a. Setoff Rights Under Bankruptcy Code Section 553 and Internal Revenue Code Section 6402

Bankruptcy Code § 553(a) "sets forth a general rule, with certain exceptions, that any right of setoff [also called an offset] that a creditor possessed prior to the debtor's filing for bankruptcy is not affected by the Bankruptcy Code." *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16, 20 (1995). "Although no federal right of setoff is created by the Bankruptcy Code, 11 U.S.C. § 553(a) provides that, with certain exceptions, whatever right of setoff otherwise exists is preserved in bankruptcy." *Id.* at 18.

"Courts have construed the language of [§] 553(a) to be 'permissive in nature, rather than mandatory.'" *In re Shortt*, 277 B.R. 683, 688 (Bankr. N.D. Tex. 2002) (quoting *Alexander v. Comm'n, Internal Revenue Service, (In re Alexander)*, 225 B.R. 145, 147 (Bankr. W.D. Ky. 1998)). The bankruptcy court may exercise its equitable discretion to determine whether to apply an offset provision of the Bankruptcy Code. *Cumberland Glass Mfg. Co. v. De Witt*, 237 U.S. 447, 454–55 (1915) (discussing § 68a of the Bankruptcy Act of 1898, the offset provision that predated § 553).

The Court reviews a bankruptcy court's decision to disallow setoff for abuse of discretion. *In re Lambert Oil Co.*, 347 B.R. at 521 (citing *In re Larbar Corp.*, 177 F.3d at 447); *see also In re Gould*, 401 B.R. at 421; *Melamed v. Lake Cty. Nat. Bank*, 727 F.2d 1399, 1404 (6th Cir. 1984). "[A] bankruptcy court necessarily abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *In re Gould*, 401 B.R. at 429. Setoff rights "should be enforced unless 'compelling circumstances' require otherwise." *Id.* (quoting *Camelback Hosp., Inc. v. Buckenmaier (In re Buckernmaier)*, 127 B.R. 233, 237 (B.A.P. 9th Cir. 1991) (citation omitted in original)).

Section 553 allows "the use of setoff whe[n] three conditions exist: (1) the creditor holds a claim against the debtor that arose before the commencement of the case; (2) the creditor owes a debt to the debtor that also arose before the commencement of the case; and (3) the claim and debt are mutual." *In re Harrison*, 383 B.R. 398, 400 (Bankr. W.D. Ky. 2008) (citing 11 U.S.C. § 553(a); *In re Morristown Lincoln–Mercury, Inc.*, 42 B.R. 413, 415 (Bankr. E.D. Tenn. 1984)).[26]

---

[26] The Debtors do not contend that the IRS fails to meet the necessary conditions to apply the offset pursuant to § 553. Instead, the Debtors argue that any right to the 2013 overpayment

Internal Revenue Code § 6402 establishes the United States's discretionary right to apply tax overpayments to preexisting tax liabilities, creating the setoff at issue here:

> In the case of any overpayment, the Secretary, within the applicable period of limitations, may credit the amount of such overpayment, including any interest allowed thereon, against any liability in respect of an internal revenue tax on the part of the person who made the overpayment and shall, subject to [certain statutory limitations inapplicable here], refund any balance to such person.

26 U.S.C. § 6402(a).

### b. Right to Exempt Property Pursuant to Bankruptcy Code Section 522 and Virginia Code Section 34-4

Bankruptcy Code § 522 permits debtors to exempt certain property from the bankruptcy estate, meaning the debtor retains that property outside the reach of creditors. *See* 11 U.S.C. § 522(b)(1). Section 522(b)(3) allows debtors to exempt, with certain limitations not applicable here, "any property that is exempt under [f]ederal law . . . or [s]tate or local law that is applicable on the date of the filing of the petition." 11 U.S.C. § 522(b)(3).

Relevant here, Virginia Code § 34-4 (the Virginia Homestead Exemption) authorizes a debtor to exempt from a creditor's collection "real and personal property, or either, to be selected by the householder, including money and debts due the householder not exceeding $5,000 in value." Va. Code § 34-4.

### 2. The Debtors' $3,208.00 Tax Overpayment Became Part of the Bankruptcy Estate On May 29, 2014

Before deciding whether the Debtors properly exempted property from the bankruptcy estate under § 522 or the IRS properly performed an offset against property in the bankruptcy estate under § 553, the Court must first address whether the Debtors' $3,208.00 income tax overpayment became part of the bankruptcy estate at all. The Court concludes that it does. First,

---

the IRS may have pursuant to § 553 becomes subordinate to the Debtors' right to exempt the 2013 overpayment pursuant to § 522 in the bankruptcy proceeding.

the Debtors' $3,208.00 overpayment vested as a property interest on December 31, 2013 at midnight. Next, the Debtors possessed that property interest when they filed for bankruptcy, on May 29, 2014. Upon filing for bankruptcy, all of the Debtors' property, including the $3,208.00 overpayment, became part of the bankruptcy estate, and by extension, subject to the provisions of the Bankruptcy Code.[27]

Virginia bankruptcy courts have held that a taxpayer's right to recover his or her tax overpayment arises at midnight on December 31 of the taxable year in which the overpayment occurred. *See, e.g., In re Sexton*, 508 B.R. at 662 (The debtor's "right to recover her tax overpayment arose for the 2012 tax year at . . . midnight on December 31, 2012."). Absent specific action by the United States regarding the Debtors' overpayment—i.e., absent the United States completing the statutorily authorized offset under § 6402—before midnight on December 31, 2013, the Debtors' property interest in the overpayment vested at that time. *See In re Addison*, 2016 WL 223771, at *4.

---

[27] Property in the bankruptcy estate generally becomes subject to an automatic stay. *See* 11 U.S.C. § 362(a). Section § 362(b) lists exceptions to the automatic stay, including, applicable here,

> the setoff under applicable nonbankruptcy law of an income tax refund, by a governmental unit, with respect to a taxable period that ended before the date of the order for relief against an income tax liability for a taxable period that also ended before the date of the order for relief. . . .

11 U.S.C. § 362(b)(26). The United States, then, did not violate the automatic stay by applying the 2013 overpayment to the preexisting tax liability and no dispute exists that implicates § 362(b)(26).

Still, the United States must comply with *all* of the provisions of the Bankruptcy Code. Although § 553 preserves the right to offset, and § 362 allows the IRS to carry out offsets without relief from the automatic stay, § 522 proscribes the setoff because the Debtors properly exempted the $3,208.00 overpayment. The issue becomes what order in which the provisions apply. The conflict between § 553's preservation of setoff rights and § 522's authorization to exempt property forms the basis of the Court's discussion in Section IV, Part B.3, *infra*. For the reasons discussed below, the Court finds that, in this case, the bankruptcy filing requires the United States to comply with § 522 by releasing the funds to the Debtors.

As of December 31, 2013, the Debtors owed the IRS $13,547.10 in unpaid taxes from 2008, 2009, and 2010.[28] Also as of that date, the Debtors had paid $10,262.00 in federal taxes for the tax year 2013 through withholding from their earnings. The Debtors' tax liability for 2013 amounted to only $7,054.00, resulting in an overpayment of $3,208.00. As of December 31, 2013, at midnight, the Debtors had a property interest in the $3,208.00 overpayment. *In re Sexton*, 508 B.R. at 662; *see also In re Addison*, 2016 WL 223771, at *4.

The United States does not challenge that the Debtors had a property interest in their overpayment that vested on midnight of December 31, 2013. Instead, the United States challenges the nature of the property interest.

A 2001 case from the United States Court of Appeals for the Fifth Circuit forms the basis of the argument. *In re Luongo*, 259 F.3d 323, 335 (5th Cir. 2001). Despite its limited application,[29] many courts have followed the 2001 finding that a federal tax refund constitutes only a contingent claim. *See, e.g., In re Gould*, 401 B.R. at 425. "Because the prior unpaid tax liability exceeded the amount of the overpayment, the debtor was not entitled to a refund and the tax refund did not become property of the estate." *In re Luongo*, 259 F.3d at 335. This would mean no money enters the estate because the offset occurs before any "contingent" claim

---

[28] This action implicates only 2008 and 2009 tax liabilities, so the Court need not address the Debtors' 2010 tax liability.

[29] The Fifth Circuit decided *In re Luongo* before the enactment of 11 U.S.C. § 362(b)(26), which created a generally applicable statutory exception to the Bankruptcy Code's automatic stay provision for the purpose of offsetting a tax debt against a tax overpayment. *See* 11 U.S.C. § 362(b)(26); *see also In re Sexton*, 508 B.R. at 657 (discussing the enactment of 11 U.S.C. § 362(b)(26)). *In re Luongo*'s application of a different statutory framework limits its persuasive force. *In re Sexton*, 508 B.R. at 657–58 ("[A]lthough the Court faces a similar question as the Fifth Circuit did in *[In re] Luongo*, the statutory framework under which we proceed is different in this important regard.")

ripened. *In re Luongo*, and the United States here, relied on two statutory provisions to reach this conclusion.

*In re Luongo* and its progeny state that, under § 6402, the United States has a right to set off any tax overpayment against any preexisting tax liability owed it. 26 U.S.C. § 6402(a). Section 553 of the Bankruptcy Code generally preserves a creditor's right to offset mutual debts that existed before the petition for bankruptcy. *See* 11 U.S.C. § 553(a). Taken together, § 6402 created and § 553 preserved, the United States's right to offset the 2013 overpayment to the 2008 and 2009 tax liabilities. Because the Debtors' preexisting tax liabilities exceeded the 2013 overpayment, the contingent claim was valueless and never became part of the bankruptcy estate. The Court recognizes that a number of non-binding decisions have followed the reasoning in *In re Luongo* in recent years.[30] *See, e.g., In re Gould*, 401 B.R. at 425; *see also In re Shortt*, 277 B.R. at 688.

Nonetheless, the Court holds that the $3,208.00 overpayment became part of the bankruptcy estate when the Debtors filed for bankruptcy. In making this finding, the Court adopts the long-standing approach embraced by the majority of courts, including the majority of Virginia bankruptcy decisions that have considered the issue. *See In re Sexton*, 508 B.R. at 668; *In re Addison*, 533 B.R. at 531. Because the $3,208.00 overpayment became part of the bankruptcy estate, the Bankruptcy Code provisions affect the IRS's ability to offset pursuant to § 6402. Here, the Debtors' authority to exempt the $3,208.00 pursuant to § 522 and Virginia

---

[30] Some courts have noted that "recent cases" trend towards finding that § 553 supersedes § 522. *See, e.g., In re Benson*, 566 B.R. at 808. The Bankruptcy Court below stated that "[a] number of more recent decisions" have adopted the *In re Luongo approach.* (App. 0042.) The Court cannot agree with this characterization. The 2001 *In re Luongo* decision may have sparked a line of cases prioritizing § 553 over § 522, but many cases decided after *In re Luongo* have rejected its approach and found the reasoning of *In re Luongo* unpersuasive. *See, e.g., In re Addison,* 533 B.R. 520.

Code § 34-4 overrides the IRS's authority to offset the overpayment with preexisting tax liability pursuant to § 553 and § 6402.[31]

On May 29, 2014, the Debtors filed for bankruptcy. As of that date, the Debtors had not yet filed their 2013 federal income tax return and the IRS had not applied § 6402 to offset the 2013 overpayment against the preexisting tax debt. Parties disagree about the effect of the bankruptcy filing on the 2013 overpayment given this timeline.

The Debtors' May 29, 2014 bankruptcy filing created a bankruptcy estate, comprised of certain of the debtor's property as specified by statute. *See* 11 U.S.C. § 541(a)(1) ("The commencement of a case under . . . this title creates an estate."). The Bankruptcy Code construes property broadly. "An estate in bankruptcy consists of all the interests in property, legal and equitable, possessed by the debtor at the time of filing, as well as those interests recovered or recoverable through transfer and lien avoidance provisions." *Owen v. Owen*, 500 U.S. 305, 308 (1991); *see also In re Sexton*, 508 B.R. at 656 (citing 11 U.S.C. § 541(a) (Section 541 construes property "liberally to include all property interests of the debtor at the time she [or he] files her [or his] petition, irrespective of whether the property interests are legal or equitable, tangible or intangible, or vested or contingent.")).

---

[31] This conclusion does not mean that the United States automatically forfeits any claims to the overpayment that existed prepetition. Instead, it means that the IRS's claim under § 6402 became contingent on compliance with the Bankruptcy Code and subordinate to them, including provisions that proscribe the United States from completing this offset.

Section 553, in conjunction with 11 U.S.C. § 362(b)(26) (exempting the IRS from the automatic stay under the facts of this case), authorizes the United States to carry out the setoff against the overpayment at issue here. But Section 522 authorizes the Debtors to exempt the overpayment from the collection of creditors. The issue becomes determining which provision applies first. The Court finds that § 522 applies first, so that Debtors may exempt their eligible property first. The United States retains its right to offset pursuant to § 6402 with regard to any remaining balance.

Because the United States had not yet offset the 2013 tax overpayment against the

Debtors' preexisting tax liabilities, the Debtors' overpayment became part of the bankruptcy

estate on May 29, 2014.[32] 11 U.S.C. § 541(a–b); *In re Sexton*, 508 B.R. at 662. Once the

$3,208.00 overpayment became part of the bankruptcy estate, the Bankruptcy Code required the

United States and the Debtors to comply with its provisions.[33] The Debtors properly claimed an

exemption to the sum certain of $3,208.00 pursuant to § 522 and Virginia Code § 34-4, shielding

---

[32] Some courts have drawn a distinction between an overpayment and a refund. *See, e.g.*, *In re Gould*, 401 B.R. at 424–25 ("[T]he debtor's interest in a *refund* does not necessarily extend to the full value of any *overpayment* of taxes in a given tax year." (quoting *Lyle v. Santa Clara Cty. Dept. of Child Support Servs. (In re Lyle)*, 324 B.R. 128, 131 (Bankr. N.D. Cal. 2005)); *but see In re Sexton*, 508 B.R. at 658 n.14 (rejecting the distinction between a tax overpayment and a tax refund as "unimportant" once the property becomes part of the bankruptcy estate). The Court adopts the position set forth in *In re Sexton*: once the property becomes part of the bankruptcy estate, it becomes subject to all of the provisions of the Bankruptcy Code. The characterization of property as an overpayment or a refund has no bearing on whether the Bankruptcy Code provisions apply to the property. The provisions apply with equal force to all property in the bankruptcy estate.

[33] The United States defines a right to setoff as "an affirmative defense to an action on a debt," distinguishable from "a lien or security interest." (Appellant's Br. 28.) Some courts have discussed whether a material difference exists between the completion of an offset and the collection of a debt. *Compare In re Wiegand*, 199 B.R. 639, 642 (W.D. Mich. 1996) ("The key to resolving the apparent conflict between [§§] 522(c) and 553(a)[] is found in the distinction between offsetting a mutual obligation and collecting on a unilateral debt."), *with In re Alexander*, 225 B.R. at 150 ("The I.R.S. argues that because the Congressional history only indicates that dischargeable tax claims may not be *collected* out of exempt property, there is no indication that Congress intended to prohibit the *set-off* of exempt funds against a dischargeable tax debt. The Court rejects the I.R.S.'s distinction, finding that it exalts form over substance. Whether the I.R.S. asserted control over the funds through the mechanism of set-off or through a collection process, the result is the same."). The Court finds any distinction immaterial here because the nature of the right does not alter the Court's ultimate finding: the IRS must comply with the provisions of the Bankruptcy Code, and Bankruptcy Code § 522 exempts the Debtors' $3,208.00 from the IRS's reach.

the $3,208.00 from creditors. The United States failed to timely object to this claim for an exemption.[34]

The 2013 overpayment's inclusion in the bankruptcy estate means the United States could not, absent some authorizing statutory language in the Bankruptcy Code, unilaterally take property from the bankruptcy estate and apply it to preexisting debts pursuant to non-bankruptcy law. The United States's next argument—that § 553 provides the necessary statutory language to do exactly that—requires the Court to consider the intersection between §§ 522 and 553.

### 3.    Debtors' Rights Under Section 522 Supersede the United States's Rights Under 553

When the Debtors filed for bankruptcy on May 29, 2014, all of the Debtors' property went into the bankruptcy estate, including the $3,208.00 overpayment. The dispute before the Court, and the one that has sparked so much legal debate, arises because both the Debtors and the IRS claim entitlement to the $3,208.00 under different statutory provisions of the Bankruptcy Code.

As the Bankruptcy Court recognized, an apparent conflict exists "between § 553, which unqualifiedly preserves the right of offset, and § 522(c), which provides that property claimed exempt is not liable for prepetition debts." (App. 0041.) Courts have struggled to reconcile

---

[34] The United States asserts that because the claim was contingent on the IRS processing offsets under § 6402, the United States did not need to object to the claim for exemption to preserve its setoff rights because the claim was ultimately valueless. The United States's claim relies on its previous argument that only a contingent claim for the $3,208.00 tax overpayment, rather than the $3,208.00 overpayment itself, became part of the bankruptcy estate. The claim finds support in *In re Luongo*, 259 F.3d at 335.

This Court disagrees. Having found that the $3,208.00 overpayment became part of the bankruptcy estate upon the May 29, 2014 filing for bankruptcy, the United States's argument that it did not need to object to a valueless claim must necessarily fail. *See, e.g.*, *In re Alexander*, 225 B.R. at 148. And given the plethora of cases, including those in Virginia, that have determined a refund to be part of a bankruptcy estate, the Court sees no inequity in holding the United States to its decision not to object.

§§ 522 and 553, resulting in courts reaching conflicting outcomes. *Compare In re Alexander*, 225 B.R. at 149 (holding that § 522(c) "would simply have no meaning" if the court allowed § 553 to supersede it), *with In re Bourne*, 262 B.R. 745, 756 (Bankr. E.D. Tenn. 2001) ("[B]y giving primary effect to the exemption rights of a debtor, the offset right of a creditor is often completely nullified, as would be the result in the instant case. It is just as logical to give effect to both provisions by holding that a debtor may claim an exemption which is valid as to all creditors except one having a right of offset.").

Courts that have determined that § 522 supersedes § 553 often rely on three arguments. *See, e.g.*, *In re Benson*, 566 B.R. at 808–11 (discussing this line of cases and their reasoning at length). First, this interpretation prevents nullification of § 522. *Id.* Second, the Bankruptcy Code's goal of providing debtors with a fresh start overrides the IRS's right to offset. *Id.* Third, the legislative history suggests Congress intended for § 522 to supersede § 553. *Id.* A number of courts have also discussed § 553's history as "permissive" rather than mandatory, finding that the application of a permissive provision must yield to debtors' exemption under § 522. *See, e.g.*, *In re Alexander*, 225 B.R. at 147.

Courts that have determined that § 553 supersedes § 522 often rely on § 553's "plain language." *See, e.g.*, *In re Benson*, 566 B.R. at 813 ("[W]hen the statute's language is plain, the sole function of the courts—at least where the disposition required by the text is not absurd—is to enforce it according to its terms." (quoting *Lamie v. United States Trustee*, 540 U.S. 526, 534 (2004))). This line of cases finds § 553's express language determinative. With certain exceptions not applicable here,

> this title *does not affect* any right of a creditor to offset a mutual debt owing by such creditor to the debtor that arose before the commencement of the case under this title against a claim of such creditor against the debtor that arose before the commencement of the case . . . .

11 U.S.C. § 553(a) (emphasis added). Courts have also found, in diametric opposition to others, that nullification arguments favor interpreting § 553 to supersede § 522 to prevent nullification of § 553. Again counter to previous decisions, courts have noted that the legislative history of § 522 states nothing about offsets, suggesting Congress did not mean for exemptions under § 522 to affect any right to offset existing outside of bankruptcy. The fact that § 553 follows § 522 in the Bankruptcy Code has led some courts to conclude § 553 supersedes. *See, e.g., Miller v. United States*, 422 B.R. 168, 173 (Bankr. W.D. Wisc. 2010) ("[I]t is [a] long-settled rule of statutory construction that where there is irreconcilable conflict between parts of the same act, the last in order of arrangement controls." (internal citations omitted)).

As the Bankruptcy Court noted, "[p]ersuasive arguments can be made to support either view." (App. 0042.) After reviewing the statutory language, existing case law, and the parties' arguments, the Bankruptcy Court ultimately adopted the reasoning set forth in *In re Sexton* and *In re Addison*, holding that "the Debtors' exemption in their 2013 tax refund supersedes the setoff rights of the United States under § 553." (App. 0044.)

The Court reviews the Bankruptcy Court's decision for abuse of discretion. *In re Lambert Oil Co., Inc.*, 347 B.R. at 521; *see also In re Gould*, 401 B.R. at 421. It would be difficult to find that a court that weighed these competing interests, as the Bankruptcy Court did here, abuses its discretion when ultimately deciding between allowing or disallowing a § 553 offset. Moreover, the Court does not necessarily see the apparent conflict between §§ 522 and 553 as irreconcilable. First, the Bankruptcy Court did not abuse its equitable discretion in holding that the IRS's right to setoff under § 553 appropriately gave way to the Debtors' claimed exemption under § 522. Section 553 is permissive in application, not mandatory. Setoff rights "should be enforced 'unless compelling circumstances' require otherwise." *In re Gould*, 401

B.R. at 429 (quoting *In re Buckernmaier*, 127 B.R. at 237 (citation omitted in original)). The Court concludes that the Bankruptcy Code's authorization of the claimed exemption under § 522 creates a compelling circumstance here. Next, the Court adopts the majority position that interpreting § 522 to supersede § 553 avoids nullifying either provision in its entirety, although the Court recognizes that nothing remains in this particular case for the IRS to offset. Finally, after reviewing the policy rationale throughout existing case law, the Court finds that prioritizing § 522 over § 553 best supports the fundamental goals of the Bankruptcy Code.[35] For all of these reasons, the Court will affirm the Bankruptcy Court's holding.

### a.     Fundamental Principles of Statutory Interpretation

The purpose of statutory interpretation is "to try to determine congressional intent." *Dole v. United Steelworkers of America*, 494 U.S. 26, 35 (1990) (citation omitted). The analysis must "begin, as always, with the language of the statutory text," and "[i]n the absence of a definition

---

[35] The Court declines to rest its decision on legislative history because it does not clarify the outcome. Although the Bankruptcy Court did not rely on legislative history in its ruling, the United States argues on appeal that legislative history favors interpreting § 553 to supersede § 522.

*In re Bourne* held that the absence of any reference to offsets in the legislative history surrounding § 522 meant that Congress did not intend to limit the right to setoff with the provision. 262 B.R. at 756–57. The United States asks the Court to adopt this interpretation, arguing that the "legislative history says nothing about offsets." (Appellant's Br. 52 (citing *IRS v. White*, 365 B.R. 457, 463 (M.D. Pa. 2007)).)

*In re Alexander*, on the other hand, found "that the legislative history of § 522 supports the conclusion that Congress did not intend that exempt property be liable for discharged tax debts, through set-off or otherwise." 225 B.R. at 150. In support of this argument, the court in *In re Alexander* discussed a previous draft, never enacted, which would have prioritized the repayment of tax debts over a debtor's right to exempt property. *Id.* (citing S. 2266, 95th Cong. (1977)). *In re Alexander* concludes that Congress did not "intend that exempt property be liable to the payment of dischargeable tax debts." *Id.* (quoting *In re Monteith*, 23 B.R. 601, 604 (Bankr. N.D. Ohio 1982)).

Persuasive arguments exist for either position and the evidence appears inconclusive. The Court finds that the legislative history does not compel favoring one provision over the other.

from Congress, [the Court] accord[s] words in a statute their ordinary, contemporary, common meaning." *United States v. Midgett*, 198 F.3d 143, 145–46 (4th Cir. 1999) (internal citation and quotation marks omitted); *see also Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 388 (1993) ("Courts properly assume, absent sufficient indication to the contrary, that Congress intends the words in its enactments to carry 'their ordinary, contemporary, common meaning.'" (quoting *Perrin v. United States*, 444 U.S. 37, 42 (1979))).

The Court must look to the statute as a whole in determining the meaning of individual words because "the meaning of statutory language, plain or not, depends on context." *King v. St. Vincent's Hosp.*, 502 U.S. 215, 221 (1991); *see also Dole*, 494 U.S. at 35 ("[I]n expounding a statute, we are not guided by a single sentence or member of a sentence, but look to the provisions of the whole law, and to its object and policy." (internal citation and quotation marks omitted)). And courts should read statutes, "where possible[,] as effecting a 'symmetrical and coherent regulatory scheme.'" *BP America Prod. Co. v. Burton*, 549 U.S. 84, 99 (2006) (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 133 (2000)).

When two provisions of a statute appear to conflict, the court, if possible, "must interpret the statute to give effect to both provisions." *Husted v. A. Philip Randolph Inst.*, 138 S. Ct. 1833, 1842 (2018) (quoting *Ricci v. DeStefano*, 557 U.S. 557, 580 (2009)); *see also In re Alexander*, 225 B.R. at 149 (quoting *In re Miel*, 134 B.R. 229, 235 (Bankr. W.D. Mich. 1991); *In re Monteith*, 23 B.R. 601, 603 (Bankr. N.D. Ohio 1982) ("[W]hen two provisions of a statute are in conflict they should be interpreted in such a fashion as to give meaning to the whole.")). If possible, the court "should favor an interpretation that gives meaning to *each* statutory provision." *Life Techs. Corp. v. Promega Corp.*, 137 S. Ct. 734, 740 (2017) (emphasis added).

When "the terms of [a] statute are unambiguous on their face, or in light of ordinary principles of statutory interpretation," judicial inquiry normally ends. *United States v. Morison*, 844 F.2d 1057, 1064 (4th Cir. 1988). But if the "terms of a statutory provision are ambiguous [the Court may] . . . consider other evidence to interpret the meaning of the provision, including the legislative history and the provision's heading or title." *United States v. Hatcher*, 560 F.3d 222, 226 (4th Cir. 2009) (citing *Ratzlaf v. United States*, 510 U.S. 135, 147–48 (1994); *Bhd. of R.R. Trainmen v. Baltimore & O.R. Co.*, 331 U.S. 519, 528–29 (1947)). At base,

> [i]f the language is ambiguous, in that it lends itself to more than one reasonable interpretation, [the court's] obligation is to find that interpretation which can most fairly be said to be imbedded in the statute, in the sense of being most harmonious with its scheme and the general purposes that Congress manifested.

*United States v. Joshua*, 607 F.3d 379, 384 (4th Cir. 2010) (quoting *Newport News Shipbuilding & Dry Dock Co. v. Brown*, 376 F.3d 245, 248 (4th Cir.2004)). A court is "not at liberty to rewrite [a] statute to reflect a meaning [it] deem[s] more desirable. Instead, [courts] must give effect to the text Congress enacted." *Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 228 (2008).

### b.    Section 553's Permissive Application Does Not Supersede Section 522's Unqualified Language

The Court finds the historical interpretation of § 553 instructive. Historically, allowing setoff under the Bankruptcy Code remained within the equitable discretion of the court presiding over the bankruptcy action, rather than mandatory. *Cumberland*, 237 U.S. at 455; *see also In re Alexander*, 225 B.R. at 147. The apparent tension between § 553 and § 522 dissipates because § 553's permissive application must yield to § 522's unqualified authorization to Debtors to exempt property pursuant to its requirements. The Court finds that this exemption right, imbedded in the same Code as the permissive application of offsets, creates a compelling circumstance that justifies the disallowance of an offset if the Debtor properly exempts the property prior to the offset being invoked. This interpretation of § 553, rooted in legal history,

neither nullifies nor weakens § 553, but instead affirms the longstanding tradition of interpreting

offsets as subject to the discretion of the court overseeing the bankruptcy proceeding.[36]

As early as 1913, the Supreme Court of the United States described the Bankruptcy

Code's preservation of setoff rights as "permissive rather than mandatory." *Cumberland*, 237

U.S. at 455 (discussing the history of setoff rights under § 68a of the Bankruptcy Act of 1898).

Section 68a of the Bankruptcy Act of 1898 provided: "in all cases of mutual debts or mutual

credits between the estate of a bankrupt and a creditor the account shall be stated and one debt

shall be set off against the other, and the balance only shall be allowed or paid." *Id.* at 454

(citation omitted in original). The Supreme Court in *Cumberland*, analyzing § 68a, discussed the

nature of setoff rights under the Act of 1898 and the Bankruptcy Act of 1867 that predated it. *Id.*

at 454–55. The *Cumberland* Court held that the decision whether to apply setoff rights or not "is

placed within the control of the bankruptcy court, which exercises its discretion in these cases

upon the general principles of equity." *Id.* at 455 (citing *Hitchcock v. Rollo*, 3 Biss. 276, Fed.

Cas. No. 6,535).

Section 68a predates the modern § 553. *United States on behalf of Internal Revenue*

*Service v. Norton*, 717 F.2d 767, 772 (3d Cir. 1983) (citing 11 U.S.C. § 108(a) (1971) and

referring to "[§] 68a of the Bankruptcy Act of 1898" as "the predecessor of [§] 553"). Nothing

---

[36] The Bankruptcy Code is not unique in interpreting offsets as discretionary. The provision giving rise to the offset here, § 6402 of the Internal Revenue Code, permits, but does not require, offset. *See* 26 U.S.C. 6402(a). Even the Internal Revenue Code, then, seems to contemplate circumstances under which a setoff would be inequitable or otherwise disfavored. The Court recognizes that the decision to invoke § 6402 rests in the discretion of the IRS, which here applied § 6402 to offset the $3,208.00 overpayment against preexisting tax liabilities.

The United States's decision to apply § 6402 does not compel the Bankruptcy Court to allow the offset under § 553. Other courts have found that even mandatory provisions of the Tax Revenue Code are subordinate to the provisions of the Bankruptcy Code. *See, e.g., In re Addison,* 533 B.R. 520 (finding that the IRS's application of a tax overpayment to a preexisting government debt pursuant to mandatory federal law violated the automatic stay of the bankruptcy proceeding).

suggests the precise language of the current Bankruptcy Code altered the fundamental treatment of offset rights in a bankruptcy proceeding. In fact, compared to § 553, § 68(a)'s

> language is less permissive than the modern law in declaring that "one debt *shall* be set off against the other, and the balance only *shall* be allowed or paid." 11 U.S.C. § 108(a) (1971) [emphasis added]. Even that statute, which on its face seems to mandate the cancellation of mutual debts, has been interpreted as giving broad discretion to the courts and as recognizing setoff rights only "as established in common law and equitable procedure." [*Cumberland*, 237 U.S. at 455]. The broad equitable discretion of courts in recognizing setoff rights defined by the common law has been carried over to the Bankruptcy Reform Act of 1978 and in particular to [§] 553, whose language is permissive, not mandatory. "Its application, when properly invoked before a court, rests in the discretion of that court, which exercises such discretion under the general principles of equality." 4 Collier on Bankruptcy ¶ 553.02, at 553-11 (15th ed. 1983).

*Id.*

Some courts have held that § 553's plain language must prevail over § 522. *In re Benson*, 566 B.R. at 813. But § 522(c) just as plainly states that "property exempted under this section is not liable during or after the case for *any* debt of the debtor that arose . . . before the commencement of the case." 11 U.S.C. § 522(c) (emphasis added). Section 522(c) lists various exceptions, but tax liabilities such as those here do not appear on the list. *Id.* Thus, language, "plain or not," must be contextualized. *St. Vincent's Hosp.*, 502 U.S. at 221. Since at least 1868, federal bankruptcy law in the United States has recognized a creditor's ability to offset mutual debts with a debtor as permissive, rather than mandatory, and as in the discretion of the court.[37] *Cumberland*, 237 U.S. at 455. The Supreme Court interpreted setoff rights this way even when interpreting § 68a, which—as *Norton* noted—seems more "plain" and even less discretionary

---

[37] At least one court has recognized that the right to setoff has "venerable origins in Roman and common law." *In re Gould*, 401 B.R. at 423. "Since that time, setoffs in bankruptcy have been generally favored and a presumption in favor of their enforcement exists." *Id.* (quoting *Carolco Television, Inc. v. Nat'l Broad. Co. (In re De Laurentiis Entm't Group Inc.)*, 963 F.2d 1269, 1277 (9th Cir. 1992) (internal citation omitted)). The presumption may be overcome by compelling circumstances. *Id.* at 429 (citing *In re Buckernmaier*, 127 B.R. at 237).

than § 553. Given this context, the Court finds any argument relying solely on § 553's express language employs too narrow a view of the statutory language at issue and existing legal precedent.

Because § 553's applicability is permissive, rather than mandatory, and because nothing similarly narrows the scope of § 522, the Court finds § 522's exemption rights superior to § 553's setoff rights. Such an interpretation gives meaning to both sections without nullifying either.

### c. Concern Over Potential Nullification Supports Interpreting Section 522 to Supersede Section 553

The Court observes that interpreting § 522 to apply before § 553, and interpreting § 553 as permissive rather than mandatory, gives meaning to both §§ 522 and 553 without nullifying either provision. To the extent tension remains between §§ 522 and 553 in this case, the Court finds that § 553 must yield to § 522.

When two provisions of a statute appear to conflict, the court, if possible, "must interpret the statute to give effect to both provisions." *Husted*, 138 S. Ct. at 1842 (citing *Ricci*, 557 U.S. at 580). Courts should interpret statutes, when possible, to prevent nullification.

Courts considering nullification have reached contrary conclusions. In *In re Alexander*, the Bankruptcy Court held that § 522(c) "would simply have no meaning" if the court allowed § 553 to supersede it. 225 B.R. at 149. The Bankruptcy Court in *In re Bourne* reached the opposite conclusion: "It is just as logical to give effect to both provisions by holding that a debtor may claim an exemption which is valid as to all creditors except one having a right of offset." 262 B.R. at 756. Each position has merit.

After considering the applicable statutory provisions, the Court adopts the majority position that interpreting § 522 to supersede § 553 would give meaning to both provisions in

more circumstances than the reverse. Interpreting § 553 to supersede § 522 would seem to risk nullifying § 522 more regularly. This is true because the exemptions allowed in § 522 do not grant debtors unlimited leave to file exemptions. Section 522 limits the debtor's right to exempt property in two ways. First, § 522 constrains exemptions to specific allowable categories of property[38] or, as applicable here, to exemptions authorized by state law. *See* 11 U.S.C. § 522.

In this case, the Debtors invoked § 522 in conjunction with Virginia Code § 34-4, an exemption limited to $5,000.00.[39] After carving out the properly exempted $3,208.00 overpayment, § 553 still permits offsets on any remaining property in the bankruptcy estate. Although nothing remains of the Debtors' overpayment to subject to the § 553 offset provision in this particular case, the Court finds that the monetary limits in Virginia Code § 34-4, imputed to § 522 in this case, offers a sound limitation on the application of § 522 and allows § 553 to retain meaning.

Were the Court to allow § 553 to supersede § 522, the likely effect would be to broadly nullify exemptions claimed under § 522. Nothing in § 553 limits the amount a creditor can apply

---

[38] Although not at issue here, the Court considers the express limitations in § 522 relevant to the discussion. Specifically, § 522 lists twelve categories of property exempt under § 522. 11 U.S.C. § 522(d)(1–12). The provision sets monetary limits on the amount that a debtor can claim exempt under some categories. *Id.* For example, a debtor can exempt his or her interest in a motor vehicle, but only up to $3,775.00. *Id.* Because of the relatively low limitations, applying § 522 before § 553 may often result in § 553 applying, as well.

*In re Addison* illustrates the point. In that case, the Debtor listed an anticipated tax refund worth $8,957.00 as an asset of the bankruptcy estate, but sought to exempt from the estate only $2,319.00 of the anticipated tax refund under § 522 and Virginia Code § 34-4. *In re Addison*, 533 B.R. at 522. The debtor owed $80,989.00 to the United States Department of Agriculture related to a foreclosure sale. *Id.* Although the *In re Addison* court allowed the exemption to stand, *id.* at 531, a balance remained in the bankruptcy estate ($6,638.00), to which § 553 would retain force. Had the *In re Addison* court held that § 553 applied first, nothing would have remained of the $8,957.00 refund after applying it towards the $80,989.00 debt.

[39] In certain circumstances not applicable here, the statute allows exemptions up to $10,000.00. *See* Va. Code § 34-4.

to offsets: here, the Debtors owed the IRS $13,547.10 in unpaid taxes from 2008, 2009, and 2010. The amount greatly exceeds the Debtors' ability to exempt up to $5,000 of an expected tax refund under § 522 and Virginia Code § 34-4.[40] Nothing would remain of the overpayment for the Debtors to exempt if the IRS could apply § 553 offsets first.[41] This creates a compelling circumstance which justifies disallowing the offset in this case.

On the factual record before it, a finding that either provision applies before the other will necessarily appear to "nullify" one provision in this case because of the dollar amounts at issue. Considering the applicable provisions in this case, though, the Court finds that the monetary limits set by § 522 through Virginia Code § 34-4 adequately ensure that § 553 will often retain its force when the United States claims a right to offset tax overpayments against preexisting tax liabilities under § 553 and § 6402. Allowing an exemption under § 522 would limit the application of § 553, but would seemingly rarely nullify its application. Section 553 would still apply when debtors have reached the statutory limits, or when a debtor cannot exempt property

---

[40] The Debtors invoke § 522 to claim a state-created exemption. Virginia Code § 34-4 appears to impose reasonable monetary constraints on the debtor's ability to claim an exemption, which supports applying § 522 before § 553. Although this situation creates a compelling circumstance to disallow the § 553 exemption here, the Court does not, because it cannot, make the blanket assertion that § 522 will impose reasonable limits in every possible application. Section 522's allowance for claims under state law make it impossible to foresee every application and the Court can only rule on the legal issue and laws at issue before it. The record and the laws before the Court demonstrate that no evidence exists that debtors will receive inequitable windfalls by applying § 522 before § 553.

[41] This issue is not limited to the present case. In *In re Sexton*, the debt subject to § 553 offset totaled $114,617.42. 508 B.R. at 650. The Debtor sought to exempt $4,200.00 from the bankruptcy estate pursuant to the provisions at issue here, § 522 and Virginia Code § 34-4. *Id.* Clearly, if § 553 pertained first, § 522 would not have applied because the debt so extensively exceeded the exemption. In *In re Addison*, the debtor owed the federal government $80,989.00 but sought to exempt $2,319.00 under § 522 and Virginia Code § 34-4. 533 B.R. at 522. Again, if § 553 had superseded § 522, then the $80,989.00 debt would so far exceed the $2,319.00 exemption, that § 522 would have been nullified. The lack of any monetary constraint on § 553 appears to make the nullification of § 522 more likely if a court applies § 553 first.

under § 522 due to varying state provisions. For these reasons, the Court finds that concerns over nullification justify prioritizing the application of § 522 over § 553's permissive application in this case.

### d. Interpreting Section 522 to Supersede Section 553 Supports the Bankruptcy Code's Goal of Giving Debtors a Fresh Start

In addition to § 553's permissive application and evaluation of nullification, the Bankruptcy Code's goal of giving debtors a fresh start creates a compelling circumstance that justifies interpreting § 522 to supersede § 553. The Court must interpret the provisions in a manner "harmonious with [the statutory] scheme and the general purposes that Congress manifested." *Joshua*, 607 F.3d at 384 (citation omitted). The Supreme Court has recognized two fundamental goals of federal bankruptcy law: giving the debtor a fresh start and ensuring efficiency and fairness among creditors. *Lamar, Archer & Cofrin, LLP v. Appling*, 138 S. Ct. 1752, 1758 (2018) (citing *Stellwagen v. Clum*, 245 U.S. 605, 617 (1918) ("One of the 'main purpose[s]' of the federal bankruptcy system is 'to aid the unfortunate debtor by giving him a fresh start in life, free from debts, except of a certain character.'")); *Katchen*, 382 U.S. at 328 ("[T]his Court has long recognized that a chief purpose of the bankruptcy laws is 'to secure a prompt and effectual administration and settlement of the estate of all bankrupts within a limited period.'").

Courts finding that § 553 supersedes § 522 have concluded that this reading gives debtors enough of a fresh start. *See, e.g.*, *In re Bourne*, 262 B.R. at 756 ("Allowing setoff against exempt property would not undermine the general policy behind the Bankruptcy Code because . . . . [o]nly creditors who possess a valid setoff right can offset their obligation with a debtor's exempt property."). The court in *Bourne* stated that the inclusion of "eighteen categories of

debts that are excepted from discharge under § 523(a)[42] [showed that the] policy [of a fresh start] is not always paramount and is often subordinated to other social and economic concerns and objectives." *Id.* at 757 (citing *Grogan v. Garner*, 498 U.S. 279, 287 (1991)). But § 523(a) does not control here. The operative provision here, § 522, unambiguously authorizes the Debtors' claimed exemption. The claimed exemption better comports with the goal of a "fresh start" that the Bankruptcy Code envisions.

Although the Bankruptcy Code balances competing interests and does not always prioritize providing debtors with a "fresh start," nothing in § 522 contemplates limiting claims for exemptions in ways that go beyond the express limitations that Congress specified in § 522. The United States argues that the Bankruptcy Code's "general principle of a 'fresh start' is not enough to override the express language." (Appellant's Br. 48.) This Court agrees, but sees the policy rationale as persuasive when weighed against the findings above.

In conclusion, the Court recognizes that many courts have addressed the tension between §§ 522 and 553 in well-reasoned and thoughtful decisions which nevertheless reach contrary results. Persuasive arguments exist on either side of the debate. After a thorough review of the law, the Court finds that the Bankruptcy Court did not err in its application of the law, and did not abuse its discretion in disallowing the setoff in this case.

The Bankruptcy Court acted within its equitable discretion because compelling circumstances exist to disallow the setoff. First, Section 553's historically permissive application must yield to the unambiguous authorization in § 522. Second, the doctrine of interpreting statutes to prevent nullification favors a conclusion that § 522 applies before § 553,

---

[42] Section 523(a) lists nineteen (19) categories of debts that filing for bankruptcy does not discharge. 11 U.S.C. § 523(a).

even if that will sometimes, as here, result in leaving no money available for the United States to offset pursuant to § 553. Finally, the Bankruptcy Code's fundamental goal of providing debtors with a fresh start supports the Court's conclusion that compelling circumstances exist in this case that justify disallowing the offset.

The Court finds that the Debtor's $3,208.00 overpayment became part of the bankruptcy estate upon the Debtors' petition for bankruptcy and that the Debtors properly exempted it pursuant to § 522 and Virginia Code § 34-4, without objection from the United States. The Court concludes that the United States inappropriately applied the $3,208.00 overpayment to prepetition tax liabilities in violation of the Debtors' claimed exemption. The Court affirms that § 522 supersedes § 553 in this case and that the United States must release the $3,208.00 to the Debtors.

### V. Conclusion

For the foregoing reasons, the Court will affirm the Bankruptcy Court's holdings and dismiss this appeal.

An appropriate Order shall issue.

/s/
M. Hannah Lauck
United States District Judge

Richmond, Virginia
Date: 9/10/18